STATE OF LOUISIANA      *      NO. 2024-KA-0105

VERSUS      *

JERMAL WILLIAMS      *      COURT OF APPEAL

     *      FOURTH CIRCUIT

     STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 550-026, SECTION "B"
Honorable Tracey Flemings-Davillier, Judge
\* \* \* \* \* \*
**Judge Roland L. Belsome**
\* \* \* \* \* \*

(Court composed of Chief Judge Terri F. Love, Judge Roland L. Belsome, Judge Dale N. Atkins)

LOVE, C. J., AND ATKINS, J. CONCUR WITH REASONS.

Jason Rogers Williams
DISTRICT ATTORNEY
Brad Scott
Chief of Appeals
Zachary M. Phillips
Assistant District Attorney
District Attorney's Office
619 S. White Street
New Orleans, LA. 70119

     COUNSEL FOR STATE OF LOUISIANA, APPELLEE

Christopher A. Aberle
LOUISIANA APPELLATE PROJECT
P.O. Box 8583
Mandeville, LA 70470-8583

     COUNSEL FOR DEFENDANT/APPELLANT

         AFFIRMED AND REMANDED.
         OCTOBER 9, 2024

RLB         A jury found defendant, Jermal Williams ("Williams"), guilty of

manslaughter, felon in possession of a firearm, and obstruction of justice in

connection with the January 1, 2020 death of Christopher McCann ("McCann").

Williams appeals the conviction arguing that the circumstantial evidence presented

at trial was inadequate to rule out an innocent interpretation of the facts.  Williams

also contends that the trial court erred when it denied his motion to sever the felon

in possession of a firearm charge from the charges of second degree murder and

obstruction of justice that were also charged in the same indictment.  We find no

merit in defendant's claims of error by the trial court.  We therefore affirm its

judgments with the exception of the sentencing for the reasons set forth below.

***Pertinent facts***

On January 1, 2023, McCann was driving in the middle lane southbound on

South Claiborne Avenue at approximately 5:34 p.m.  A white Chevrolet Colorado

pickup truck with a black "roll bar" matched the speed of McCann's vehicle in the

left southbound lane.  While both vehicles travelled side-by-side, occupants of

pickup truck began shooting at McCann's vehicle.  The entire scene was captured

on "Real Time Crime Cameras" ("RTCCs") operated by the New Orleans Police

1

Department ("NOPD"). The video shows that the occupants of the truck fired numerous shots at McCann's vehicle over a two block stretch of South Claiborne Avenue before it came to a stop in the parking lane on the right hand side of the street. The video of the shooting was introduced as evidence at the trial.

McCann's vehicle came to a stop when it struck a wooden utility pole near the intersection of Louisiana Avenue and South Claiborne Avenue. A NOPD detective with expertise in the use of RTCCs was able to track the progress of the white pickup truck as it made its way from the scene of the crime to New Orleans' Westbank. The last sighting of the truck was at the intersection of Newton Street and Whitney Avenue. At trial, the State introduced several snippets of video showing the subject truck as it passed various RTCCs on its escape route.

Within minutes, two witnesses to the shooting called 911 to report multiple shots fired in the area of Louisiana Avenue and South Claiborne Avenue. The recordings of the emergency call were also introduced into evidence.

McCann died shortly after the shooting. A pathologist from the Orleans Parish Coroner's Office testified that McCann had suffered "multiple penetrating, perforating, and grazed gunshot wounds of the head, neck, back, and left upper arm," and his right clavicle and ribs were fractured. She concluded that the gunshot wounds caused his death.

NOPD investigators found more than 30 bullet casings at the scene of the shooting. Among them was a single 40 caliber Smith & Wesson casing. The shell casings were all placed in evidence at trial.

Through continued investigative efforts, NOPD was able to locate the truck at an apartment complex near its last video sighting. Investigators used the RTCCs to maintain video surveillance on the truck and Williams as he moved from his

residence in the apartment complex to the truck and back. A detective testified that he was able to determine, from the surveillance videos, that Williams was carrying a weapon with him during his movements.

Based on the surveillance videos, NOPD obtained a warrant to search Williams' apartment and his truck. During the search, police found a Ruger 40 caliber semi-automatic pistol and ammunition. A ballistics expert testified that the 40 caliber shell casing found at the scene was fired from the gun found in Williams' apartment. Williams admitted, on questioning by the police, that the gun was his. He also told police that the truck was his but that he had just bought it the day before the search and that he had never seen it before that day.[1] The gun was placed in evidence at trial.

The search of Williams' apartment also yielded three cell phones. By reviewing the digital contents of the phone, police were able to determine which of the phones was used by Williams. That phone was placed in evidence at trial. An officer trained in GeoLocation[2] testified that Williams' cell phone locations were tracked for the evening of McCann's death. The officer testified that the locations of the phone during the relevant times were consistent with the known locations of the Williams' truck.

### Trial court proceedings

Williams was indicted on October 1, 2020 on one count of second-degree murder, in violation of La. R.S. 14:30.1; one count of possession of a firearm by a

---

[1] Williams' testimony regarding the truck was directly contradicted by the surveillance videos that the jury viewed as part of the evidence. The videos showed Williams using the truck several times prior to the day before the search.

[2] GeoLocation is a science that allows a trained professional to determine the location of a cell phone by using information stored by the service provider. As one travels with a cell phone, it is intermittently "pinging" off telephone receiving towers and each ping tells the tower an approximate location of the telephone.

felon, in violation of La. R.S. 14:95.1; and one count of obstruction of justice, in violation of La. R.S. 14:130.1. He pled not guilty on all three charges.

In the lead up to trial, Williams moved to sever the trial of the felon in possession of a firearm charge. The trial court denied the motion. The defense made other motions not necessary to discuss in this analysis.

The case was tried for two days ending on September 13, 2023. The jury returned a verdict of manslaughter that is responsive to the second degree murder charge. The jury found Williams guilty as charged on the obstruction of justice and possession of firearm charges.

The trial court denied the defense's motions for judgment notwithstanding the verdict and for new trial and proceeded to sentencing. The court sentenced Williams to 35 years for manslaughter; 20 years for obstruction of justice; and 20 years for possession of a firearm by a convicted felon. Williams moved for a reconsideration of the sentence and that motion was also denied.

Williams' counsel then filed this appeal seeking to overturn the conviction on two bases: (1) The circumstantial evidence at trial did not exclude the reasonable hypothesis that Williams was not in the pickup truck that served as a platform for McCann's shooters; and (2) The district court erred when it denied Williams' motion to sever the firearm possession charge from the other charges in the indictment. These two arguments are analyzed in reverse order below.

***Motion to sever***

The defense here argues that by permitting the firearm possession charge to be tried along with the other indicted offenses, the trial court violated La. C.Cr. P. art. 493.2. Article 493.2 permits the joinder of felony offenses when the offenses charged "are based on the same act or transaction or on two or more acts or

4

transactions connected together or constituting parts of a common scheme or plan" and the offenses are triable by the same mode of trial.

Williams' argument relies on La. C.Cr. P. art. 495.1, which allows separate trials of offenses if the defendant is prejudiced by their joinder. The defense points out that the joinder of the offenses permitted the State to present evidence that Williams had been convicted of aggravated assault of a police officer. This knowledge, according to the defense, is prejudicial to the defendant because this evidence could not be admitted otherwise. We disagree with that argument and find no error in the court's decision to try all three charges in one jury trial. The fact that Williams possessed a firearm indicates motive, intent and preparation to commit crime. He was aware that his prior conviction prohibited him from owning the 40 caliber Ruger handgun. He showed guilty knowledge of that fact by hiding the weapon in a secret location in his home to prevent its discovery. He acknowledged his guilt upon questioning by police when he admitted that the gun was his and that he would "take his lick" for possession of a firearm by a convicted felon.[3] La. C.E. art. 404(B)(1) permits evidence of other crimes when they are offered for the purpose of proving motive, opportunity, intent, preparation, plan or knowledge among other things. The defense is incorrect in its argument that evidence of the prior crime of aggravated assault would be inadmissible but for the combination of charges in this single trial. (See State v. Clanton, 2019-0316 (La. App. 4 Cir. 11/6/19), 285 So. 3d 31.)

Moreover, this Court has repeatedly upheld the joinder of felon in possession of a firearm charges with murder or attempted murder charges. See,

---

[3] At trial, Williams stipulated that he was a felon who had been convicted of aggravated assault upon a police officer, for which he was sentenced to five years.

e.g., *State v. Groves*, 2020-0450 (La.App. 4 Cir. 6/10/21), 323 So.3d 957; *State v. Jones*, 2016-0122 (La.App. 4 Cir. 10/5/16), 203 So.3d 344; *State v. Galle*, 2011-0930 (La.App. 4 Cir. 2/13/13), 107 So.3d 916.

### *Circumstantial evidence rule*

As related above, the evidence upon which the State built its case is circumstantial. Particularly, the record reflects the following salient facts:

1. McCann was killed by bullets that were fired from a white pickup truck with a dark roll bar.

2. At least 3 guns were fired at the scene of the crime.

3. One of the weapons was a 40 caliber handgun.

4. Williams was found to be in possession of a 40 caliber handgun at the place of his residence.

5. Ballistics showed that the 40 caliber spent shell casing found at the crime scene was fired from the handgun found in Williams' residence. Williams acknowledged that the gun was his.

6. Three telephones were found at Williams' residence. One of them contained contacts and other information uniquely indicating its use by Williams.

7. Other evidence showed that the same telephone that had Williams' digital information followed the same path as the white pickup truck from which bullets were fired at McCann on the night and at the time that McCann was killed.

8. The same white pickup truck seen in the video of McCann's killing was found parked outside Williams' residence.

9. Surveillance videos showed Williams driving the pickup truck on multiple occasions subsequent to the day of McCann's demise.

The State and the defense both cite La. R. S. 15:438 as controlling law governing the State's burden of proof when a conviction is based on circumstantial evidence. That statute requires the State to exclude every "reasonable hypothesis of innocence" in order to sustain a conviction on appeal. The evidentiary burden imposed by La. R. S. 15:438 is a guideline added to the due process requirement

6

enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Jackson* holds that constitutional due process is achieved when the evidence, taken in the light most favorable to the prosecution, proves the essential elements of the crime of which the defendant was convicted. This minimal standard is insufficient to satisfy the measure of proof created by La. R. S. 15:438.

The defense in the case before us argues that the prosecution did not exclude the possibility that the defendant was not in the truck that ferried McCann's killers to their destination in the evening hours of New Year's day 2020. We agree that it is possible that Williams was not in the truck. However, the mere hypothesis that he was not in his vehicle is not sufficient to trigger a reversal. The hypothesis of his absence must be a *reasonable* one. Jurisprudence provides the following definition of a reasonable hypothesis of innocence:

> A reasonable alternative hypothesis is not one "which could explain the events in an exculpatory fashion," but one that "is sufficiently reasonable that a rational juror could not 'have found proof of guilt beyond a reasonable doubt.' " *State v. Mack*, 2013-1311 (La. 5/7/14), 144 So. 3d 983, 989. (Some citations omitted.)

Against the weighty facts enumerated above, Williams argues that (1) other people went in and out of the defendant's apartment, (2) other people were seen driving his truck, (3) other phones were found in his apartment, and (4) a credit card, driver's license, and social security card belonging to someone else was found in the defendant's apartment. These facts, when taken together, do not form a hypothesis of innocence of such strength that no rational juror could have found proof of Williams' guilt beyond a reasonable doubt.

For these reasons, we find no merit in Williams' argument regarding sufficiency of the circumstantial evidence.

7

***Sentencing error***

While not raised by either party on appeal, the record reveals an error in the sentence imposed by the trial court. A person convicted of possession of a firearm by a convicted felon "shall be imprisoned at hard labor for not less than five nor more than twenty years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars." The court below failed to impose the mandatory fine for Williams's possession of a firearm by a convicted felon conviction. In *State v. Williams,* 2003-0302, p. 3 (La.App. 4 Cir. 10/6/03), 859 So.2d 751, 753, this Court held that a reviewing court must remand cases for the imposition of a mandatory fine where the trial court failed to do so.

More recently, in *State v. Dorsey*, 2020-0029, pp. 4-5 (La. App. 4 Cir. 12/9/20), 312 So.3d 652, 656, we concluded that our circuit is "constrained to follow the Fourth Circuit's prior jurisprudence directing that we remand for correction of the defendant's sentence where the trial court has failed to impose a statutorily mandated fine."

***Conclusion***

In light of the law and the facts as set forth above, the judgments of the trial court are affirmed with the exception that the case is remanded to the district court for imposition of the mandatory sentence supplied by law.

AFFIRMED AND REMANDED